## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BATSAIHAN PURVEEGIIN,** | : | |
| | : | |
| **Petitioner,** | : | **CIVIL NO. 3:CV-05-1566** |
| | : | |
| **vs.** | : | **(CHIEF JUDGE VANASKIE)** |
| | : | |
| **THOMAS DECKER₁,** | : | |
| | : | |
| **Respondent.** | : | |

## M E M O R A N D U M

Batsaihan Purveegiin is a detainee of the Bureau of Immigration and Customs

Enforcement ("BICE") currently confined at the Pike County Correctional Facility, Pennsylvania.

He filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on August 4, 2005,

challenging his continued detention by BICE.[2]  For the reasons that follow, the petition will be

granted conditionally.

---

[1]  The only proper Respondent in an immigration habeas proceeding is the Field Office Director of the Untied States Bureau of Immigration and Customs Enforcement responsible for the area where the alien is detained.  See 28 U.S.C. § 2243; Rumsfeld v. Padilla, 542 U.S. 426, 124 S. Ct. 2711, 2720 (2004).  Purveegiin has named numerous immigration officials as Respondents in this action, including Thomas Decker, field Office Director, Philadelphia, Pennsylvania.  Accordingly, the Court will delete from the caption all named Respondents with the exception of Thomas Decker.

[2]  As the petition only challenges continued detention, and not the underlying basis for removal, this Court retains jurisdiction over the petition in accordance with the REAL ID Act of 2005, H.R. 1268, 109th Cong. (2005) (enacted), Pub. L. No. 109-13, Div. B, 119 Stat. 231.

## I.      BACKGROUND

Purveegiin is a native and citizen of Mongolia.  He was admitted to the United States on April 24, 1991, as a non-immigrant student to attend The Arts League of New York for the duration of his non-immigrant status.  (Dkt. Entry 15, Ex. A, Notice to Appear.)  In June of 1992, Purveegiin stopped attending school and remained in the United States without authorization.

On May 27, 1997, the former Immigration and Naturalization Service, now BICE,[3] commenced removal proceedings against Purveegiin by filing a Notice to Appear based on his failure to maintain the conditions of his non-immigrant status.  (Id.)  Purveegiin was charged as removable pursuant to § 241(a)(1)(C)(i) of the Immigration and Nationality Act as a non-immigrant who failed to comply with the conditions of his admitted status.

Additional charges of removability were subsequently filed by the INS pursuant to INA § 237(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2(A)(ii), based upon the following convictions.  On April 14, 1997, he was convicted in the State of New York for the offenses of Criminal Impersonation in the Second Degree and Sexual Abuse in the Third Degree.  On August 18, 1995, he received another conviction in the State of New York for the offense of Petit Larceny. (Dkt. Entry 15, Ex.

---

[3] On March 1, 2003, the former INS was abolished and its functions were transferred from the Department of Justice to the Department of Homeland Security.  One of the new components, BICE, is responsible for the investigative and enforcement functions of the former INS.  See Homeland Security Act of 2002 § 471, Pub. L. No. 107-296, 116 Stat. 2135, 1292 (November 25, 2002).

B.)

Purveegiin applied for asylum and withholding of removal.  On November 25, 1997, an

Immigration Judge denied these applications and ordered Purveegiin removed from the United

States to Mongolia.  (Id., Ex. C, Memorandum of Written Decision and Order.)  An appeal was

filed to the Board of Immigration Appeals ("BIA"), which was ultimately dismissed on June 30,

1998.  (Id., Ex. D.)

Purveegiin thereafter filed a motion with the BIA to reopen his case.  On July 26, 1999,

the motion was granted, and the case remanded to the Immigration Judge to allow Purveegiin

an opportunity to submit an application under the United Nations Convention Against Torture

("CAT").  On October 4, 1999, an Immigration Judge granted withholding of removal under

CAT.  (Dkt. Entry 15, Ex. E.)  This decision was appealed by the INS to the BIA.  On June 24,

2003, the Board sustained the appeal, and Purveegiin was again ordered removed to Mongolia.

(Id., Ex. F.)

On July 18, 2003, Purveegiin filed a petition for review of the BIA's decision with the

Third Circuit Court of Appeals. On March 25, 2004, the Third Circuit issued an ordered

remanding the case to the BIA for further consideration of Purveegiin's CAT application.  (Id.,

Ex. G.)  On August 26, 2004, the BIA again ordered Purveegiin removed to Mongolia.  A

subsequent motion for reconsideration was denied on November 23, 2004.

Purveegiin next turned to the United States District Court for the Eastern District of Pennsylvania, where he filed a motion for stay of removal and petition for writ of habeas corpus on September 13, 2004. An Order was issued the following day granting a stay of removal until further notice. (Id., Ex. J.) On March 30, 2005, the Court dismissed the habeas petition and closed the case.[4]

A second petition for review and a motion for stay of removal was filed by Purveegiin in the Third Circuit Court of Appeals on September 27, 2004. In an Order issued on March 29, 2005, the Third Circuit granted the motion for stay of removal. (Id., Ex. K.) The petition for review is currently pending before the Third Circuit at this time, and the stay remains in effect.

The instant petition for writ of habeas corpus was filed here on August 4, 2005. In the petition Purveegiin challenges his continued detention pending the outcome of his challenges to removal in the Third Circuit. He has submitted volumes of supplemental filings to his petition, which he contends support his argument that he should be released.[5]

---

[4] It is unclear as to whether the Eastern District Court ever formally lifted the stay previously imposed.

[5] The filings consist of numerous letters in support of his character, evidence of his talent as an artist and correspondence he has had with both prison and BICE officials with regard to his continued detention. Also filed in this case are two documents that Purveegiin refers to as "Motions to Amend" his habeas petition. (Dkt. Entries 11, 17.) Because both of these submissions seek to provide the Court with additional information, as opposed to alter his initial filing in any way, they are more in the nature of supplements to the petition and will be construed as such.

4

A response and supporting exhibits were submitted by Respondents in opposition to the

petition on September 13, 2005.  Respondents contend that Purveegiin was given a custody

review by BICE in November of 2004.  (Id., Ex. L, Post Order Custody Review Worksheet.)  It

was decided at that time that Purveegiin's detention would be continued because he was

believed to pose a threat to the community if released, and because removal can take place

once the stay is lifted.  (Id. Ex. M, Decision to Continue Detention.)  Respondents argue that

Purveegiin's continued detention is constitutionally permissible because he received this

custody review.

## II.    DISCUSSION

There is no question that Purveegiin is subject to a final order of removal in this case.  It

is also undisputed that there is a stay of removal in place as issued by the Third Circuit Court of

Appeals on March 29, 2005.  The issue before this Court is whether Purveegiin, whose removal

has been stayed, has received the due process protection to which he is entitled as a condition

of his long-term, indefinite detention.

In Haynes v. Department of Homeland Security, 2005 WL 1606321 (M.D. Pa. July 8,

2005), this Court addressed the issue of whether an alien ordered removed on the basis of his

criminal convictions may be confined for a prolonged period of time without an opportunity to be

heard on the issue of conditional release because execution of the removal order has been

stayed by judicial order.  BICE took the position that detention of Haynes was mandatory under

8 U.S.C. § 1231(a) because he was within the 90-day removal period, the running of which had

been tolled by the stay of removal.  In rejecting this position, this Court explained:

> Under 8 U.S.C. § 1231(a), "when an alien is ordered removed, the Attorney
> General shall remove the alien from the United States within a period of 90 days."
> *Id.* § 1231(a). This is known as the "removal period." *Id.* As to the date when the
> 90-day removal period begins, section 1231(a)(1)(B) provides:
>
>> The removal period begins on the latest of the following:
>>         (i) The date the order of removal becomes administratively final.
>>         (ii) If the removal order is judicially reviewed and if a court orders a
>>         stay of the removal of the alien, the date of the court's final order.
>>         (iii) If the alien is detained or confined (except under an
>>         immigration process), the date the alien is released from detention
>>         or confinement.
>
> The INS contends that because a stay of removal was issued on September 28,
> 2004, the "removal period has been tolled." (Response to Pet. at 6.) Thus, argues
> the INS, "Haynes is still within the removal period [and][a]s such, Haynes is not
> eligible for release at this time."( *Id.*) The INS observes that, by procuring a stay
> of removal, Haynes bears responsibility for his current detention. ( *Id.* at 7-8.)
> Essentially, it is the position of the INS that Haynes remains within the ninety (90)
> day removal period, the running of which has been suspended as a consequence
> of the stay of removal. The INS uses the term "tolling" in support of its argument
> that Haynes remains within the "removal period," during which detention is
> mandatory. This position, however, does not find support in the statutory
> scheme. Section 241(a)(1) does not use the term "tolling" to describe the effect of
> a stay of removal. On the contrary, the legislation provides that, when a stay of
> removal has been ordered, the ninety (90) day removal period begins to run only
> when the court entering the stay issues a "final order." 8 U.S.C. §
> 1231(a)(1)(B)(ii).  Consistent with the statutory language prescribing the
> commencement date for the removal period, INS regulations provide, in pertinent

part, that the removal period "shall begin on the *latest* of the following dates: (B) If the court has ordered a stay of the alien's removal, the date on which, consistent with the court's order, the removal order can be executed."  8 C.F.R. § 241.4(g)(1)(i)(B) (emphasis added). No final order on the merits of Haynes's claims has yet been entered. Thus, under both the statute and the regulations, the removal period has yet to begin.

Id. at *2-3.

Because detention was not statutorily mandated, the concerns about the constitutionality of indefinite detention animating the Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001), and the Third Circuit's holding in Ngo v. INS, 192 F.3d 390 (3d Cir. 1999), were implicated.   Consistent with those rulings, this Court concluded that an alien who has procured a stay of removal and is facing the prospect of prolonged detention pending adjudication of his claims is entitled to consideration for conditional release.  In so holding, this Court found that the procedures set forth in Ngo v. INS, satisfy the due process concerns presented in a case such as Haynes, where an alien has been in custody for more than six months after a stay of removal was entered.  The Ngo procedures include (a) advance written notice to the alien of an opportunity to present information supporting release; (b) the right to representation by counsel or other individuals; (c) an opportunity for periodic personal interviews; (d) a written explanation for a custody decision; (e) the opportunity for review by INS headquarters; (f) periodic reviews of any custody decision; and (g) a refusal to presume continued detention based upon prior

7

convictions.   To hold otherwise could result in the indefinite detention of an alien who poses no threat to community or flight risk while litigating a challenge to a deportation order.

In the instant case, Respondents state that Purveegiin was provided with a custody review on November 19, 2004.  It is their contention that this review satisfies the meaningful review required by the Haynes decision.  Purveegiin argues, and Respondents do not dispute, that as of the time of the filing of the instant petition, the November 2004 review was the only review conducted.

Respondents maintain that the records review undertaken in November of 2004 is consistent with this Court's ruling in Haynes.  They base their argument on the facts that (1) Purveegiin was permitted to submit documentation in support of his release at that time, and (2) the Acting Field Officer Director decided to continue detention because Purveegiin "would be a risk in the community" if released and because he can be removed once the stay is lifted, suggesting that he is a significant flight risk.  (Dkt. Entry 15, Exs. L, M.)

Purveegiin has been in the custody of BICE for a considerable period of time since the removal order.  When an alien is detained for a greater length of time, a more rigorous review is necessary.  See Ngo v. INS, 192 F.3d 390, 399 (3d Cir. 1999) (finding that procedures requiring reviews every six months and an annual personal interview satisfied due process).

The framework set forth in § 241.4(i) provides the appropriate type of review for an alien

8

in Purveegiin's position.  This Court has made it clear that a personal interview, i.e, an

opportunity to plead one's case to the decisionmaker, is a "rudimentary element of due

process."  Oyedeji v. Ashcroft, 332 F. Supp. 2d 747, 754 (M.D. Pa. 2004); Davis v. Decker,

3:04-CV-2763 (M.D. Pa. Oct. 11, 2005) (Vanaskie, C.J.); see also Ngo, 192 F.3d at 398.  In

Haynes, this Court determined that § 241.4(i) embodied the procedures accepted by our Court

of Appeals in Ngo as satisfying due process.  Haynes, 2005 WL 1606321, at *5.  Under this

framework, a review panel must review the detainee's records[6] and, if the detainee is not

recommended for release, the review panel must personally interview the detainee.  8 C.F.R. §

241.4(i)(1)-(3).[7]

---

[6]  8 C.F.R. § 241.4(i)(2), states:

> Records review.  Initially, and at the beginning of each subsequent
> review, the HQPDU Director or a Review Panel shall review the
> alien's records.  Upon completion of this records review, the
> HQPDU Director of the Review Panel may issue a written
> recommendation that the alien be released and reasons therefor.

[7]  8 C.F.R. § 241.4(i)(3), states:

> Personal interview.
> (i) If the HQPDU Director does not accept a panel's
> recommendation to grant release after a records review, or if the
> alien is not recommended for release, a Review Panel shall
> personally interview the detainee.  The scheduling of such
> interviews shall be at the discretion of the HQPDU Director.  The
> HQPDU Director will provide a translator if he or she determines
> that such assistance is appropriate.

It is evident that Purveegiin did not receive the process this Court has determined is needed to satisfy due process concerns.  In particular, he did not have an opportunity to appear before reviewing officers to plead his case or respond to any questions.[8]  It also appears that he was not given the opportunity to present documentary evidence in support of his release.

While Purveegiin has supplemented his petition with evidence that BICE recently conducted a second custody review on January 27, 2006, it is evident that due process concerns have still not been satisfied in this case.  (Dkt. Entry 40, Ex. 1.)  There is still no evidence in the record to suggest that Purveegiin has been afforded the opportunity to plead his case for release.  As in Haynes, BICE will be provided with the opportunity to accord Purveegiin this type of process.

---

> (ii) The alien may be accompanied during the interview by a person of his or her choice, subject to reasonable security concerns at the institution's and panel's discretion, who is able to attend at the time of the scheduled interview.  Such assistance shall be at no expense to the Government.  The alien may submit to the Review Panel any information, in English, that he or she believes presents a basis for his or her release.

[8] The Post Order Custody Review Worksheet clearly indicates that no personal interview of Purveegiin was conducted for this review. (Dkt. Entry 16, Ex. L at 1.) While the reviewing officers conclude that Purveegiin poses a flight risk seemingly based entirely on the fact that a travel document was secured prior to his 2004 review, Purveegiin could possibly explain why he is not a flight risk. In fact, at the present time it appears that the travel document previously secured by BICE has expired. (Id. at 4.)

**III.     CONCLUSION**

For the reasons set forth above, the petition for a writ of habeas corpus will be granted

conditionally.  Respondents will be afforded a period of sixty (60) days within which to provide

Purveegiin the type of process set forth in 8 C.F.R. § 241.4(i).  If such process is not provided,

Purveegiin is to be released.[9]  An appropriate Order follows.

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

---

[9]  If Respondents subsequently determine that detention of Purveegiin should be
continued, Purveegiin may, of course, commence an appropriate action under 28 U.S.C.
§ 2241 challenging the detention decision.  And, of course, if the Court of Appeals vacates the
stay of removal, Respondents will be at liberty to take the action required to effect Purveegiin's
removal from the United States and detain him during the removal period.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**


BATSAIHAN PURVEEGIIN,                         :

                                              :

            Petitioner,                       :   CIVIL NO. 3:CV-05-1566

                                              :

      vs.                                     :   (CHIEF JUDGE VANASKIE)

                                              :

THOMAS DECKER,                                :

                                              :

            Respondent.                       :


## O R D E R

      **NOW, THIS 17th DAY OF FEBRUARY, 2006**, for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1.    Petitioner's Motions to Amend (Dkt. Entries 11, 17) are construed to be supplements to the petition for writ of habeas corpus. The Clerk of Court is directed to make the appropriate notation to the docket.

2.    Petitioner's "Motion to Expedite" (Dkt. Entry 30) is **DENIED AS MOOT**.

3.    The petition for writ of habeas corpus is **GRANTED CONDITIONALLY.**

4.    Respondents shall undertake a review of Purveegiin's custody status in

accordance with the provisions of 8 C.F.R. § 241.4(i) within sixty (60) days from the date of this Order.

5.    If Respondents fail to provide Purveegiin with the process required by 8 C.F.R. § 241.4(i) within sixty (60) days from the date of this Order, Purveegiin shall be released from confinement subject to pertinent conditions of supervision.

6.    Respondents shall file a status report with this Court no later than April 17, 2006.

7.    The Clerk of Court is direct to mark this matter **CLOSED**.

**s/ Thomas I. Vanaskie**

Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania